SIMMONS *v.* STATE.

(Division B. April 25, 1932. Suggestion of Error Overruled June 6, 1932.)

[141 So. 288. No. 29738.]

Currie & Currie, of Hattiesburg, and **Gardner, Odom & Gardner**, of Greenwood, for appellant.

**W. D. Conn, Jr.,** Assistant Attorney-General for the state.

Argued orally by **Neil Currie** and **H. T. Odom**, for appellant, and **W. D. Conn, Jr.**, Assistant Attorney-General, for the state.

**Griffith, J.**, delivered the opinion of the court.

Appellant was indicted and convicted of embezzlement. The proof in behalf of the state involved seventeen items or transactions, and appellant assigns forty-seven errors as having been committed by the trial court. The record in the case comprises four large volumes. Obviously, in order to bring an opinion within a reasonable length, we must summarize and combine, rather than deal with the assignments of error in detail.

Out of the seventeen items or transactions produced in evidence by the state, we select and will state one of them as typical or illustrative of the others. From the year 1925 to December, 1930, appellant was secretary and treasurer of the Hattiesburg Building & Loan Association. The proof shows that appellant was in fact the active and responsible manager of the affairs of said corporation. The course followed by the association in many, if not most, of its loans was that in making a loan for the building of a home, appellant, in behalf of the association, would approve the plans of the structure and and supervise its erection from time to time, and when completed the association would, at the hands of appellant, issue its checks direct to those who had furnished labor or material for the building, up to the amount of the agreed loan, which was then or theretofore secured to the association by a deed of trust on the land and improvements.

An arrangement of the kind stated had been made with the association in the early summer of 1927 by one Willis Ladner, and for the erection of a home to cost two thousand two hundred fifty dollars. The building was constructed and had become substantially finished

on July 19, 1927. On that date Ladner and his wife executed and delivered unto the Hattiesburg Building & Loan Association a deed of trust for two thousand two hundred fifty dollars and four days later the association issued sixteen separate checks to the various materialmen and laborers and others who had furnished material, labor, and other services towards the erection of the Ladner house, and also an additional check to said Ladner for one hundred forty-three dollars and two cents. These seventeen checks amounted in the aggregate to exactly two thousand two hundred fifty dollars, the amount of the Ladner loan secured as aforesaid. All these checks were drawn on the First National Bank, by the Hattiesburg Building & Loan Association, and were signed for the association by appellant as treasurer and were countersigned by the president of the association, and all of them were presented to the bank by the respective payees of these checks, and the bank thereupon paid to the payees out of the funds of the association the full amounts of each and all of the checks, amounting, as said, to the aggregate of the loan of two thousand two hundred fifty dollars.

On the very same day, however, to-wit, on July 23, 1927, appellant drew another check of the association signed by him as treasurer, and payable to Willis Ladner, in the sum of two thousand two hundred fifty dollars. This check was procured by appellant to be countersigned by the vice president of the association, and not by the president who had countersigned the seventeen other checks; the reason of this being obvious. Appellant thereupon without the knowledge or authority of Ladner wrote or signed the name of Willis Ladner as an indorser on the back of said check, and appellant having indorsed the check, by the writing of his own name on the back thereof, he presented the check on that day to the bank and procured the bank to credit the individual account of appellant with said sum, and to make

the corresponding debit in the deposit account of the association in the bank and on the same day from the deposit thus converted to his individual credit, appellant checked out and applied to his own use and benefit, nearly fifteen hundred dollars of the money.

There is no contradiction of the facts above stated; the facts in respect to the Ladner transaction are undisputed. But appellant argues that they are not sufficient to constitute the crime of embezzlement, for three reasons: First, because, as he contends, the facts tend to establish the crime of forgery or larceny or false pretense and not embezzlement; second, there was no embezzlement of money, as the indictment charges, but only of a portion of a deposit to the credit of the association in bank; and, third, that the embezzlement was only a check and not of money. The last two contentions were made, and were overruled by the court, in Richburger v. State, 90 Miss. 806, 44 So. 772. And as to the first, it is enough to say that it is immaterial that the acts of appellant in respect to the check for two thousand two hundred fifty dollars, payable to Ladner may have involved another crime, since it is plain that what appellant did in the handling of that check was merely a means or an instrumentality fraudulently used by him to embezzle and convert to his own use the funds of his principal and which had been intrusted to him by virtue of his employment.

Appellant contends that the indictment is insufficient and that his demurrer thereto should have been sustained because, as he argues, the presentment does not specifically set out the acts and wrongs charged; that it fails to set out the cause and nature of the accusation. The case on this point falls within the rulings of the court in Richburger v. State, supra, and Sanders v. State, 141 Miss. 289, 105 So. 523, and the latter case also expressly overrules the contention made herein by appellant that the court should have sustained his motion for a bill of particulars.

Appellant moved to quash the indictment on the ground that the principal evidence before the grand jury upon which the indictment was found was that of an expert accountant from the state auditor's office, who had made an audit of the books of the Hattiesburg Building & Loan Association, and who testified before the grand jury touching the results of his examination of said books. The auditor carried a transcript of his audit before the grand jury, and testified as to what the audit and transcript disclosed. Appellant contends that this witness gave only hearsay, or opinion, evidence, and that this is insufficient upon which to base an indictment, and appellant relies on State v. Owen, 156 Miss. 487, 126 So. 25. These books had been kept under the immediate direction and supervision of appellant as secretary of the association, and the evidence furnished by them was competent matter for grand jury action. We have recently held in Crawford v. State (Miss.), 138 So. 589, that: "When intricate accounts and voluminous business records are to be inquired into and the facts upon particular issues said to be disclosed by said records are to be adduced in proof, it must be done by way of the previous preparation, by a competent person, of definite and pertinent schedules, tabulations, or other suitable and practicable compilations, and the person who has made the compilations must be introduced as a witness so that the records in evidence may be explained and the pertinent parts thereof definitely and cogently pointed out, and so that cross-examination may be permitted to search into the soundness of the compilations or schedules and of the conclusions sought to be established." See, also, 2 Wigmore on Evidence, sec. 1230; Boston & W. R. Corp. v. Dana, 1 Gray (Mass.) 83. Since the rule is as above stated in reference to trials, it follows that an observance of the same rule before the grand jury will protect the indictment from attack on the ground here relied on by appellant, even if the details of this

matter could be gone into at all on a motion to quash, as to which we express no opinion here. The decision above quoted disposes also of the objection made to the auditor's testimony in the trial.

Appellant moved to quash the trial panel and to enter a mistrial because the sheriff, in the presence of the jurors during the court of the selection of the jury, would frequently retire to a room in full view of the jurors, and would consult with the prosecuting attorneys on the qualifications of tendered jurors, and because after the regular panel had been exhausted the sheriff called talesmen and thereupon repeated his course of conferring with the attorneys for the prosecution. It is not charged that any corruption or corrupt motives inspired the conduct of the sheriff, or that he conferred or in any way directly communicated with any juror. In fact, the evidence in the record on this point is in the negative on the issues last mentioned.

It has long been the custom and common practice in this state for the sheriffs to counsel with and aid the district attorneys in the selection of jurors. Without this aid and counsel the district attorney in many counties would be seriously hindered, if not thwarted, in the prosecution of crime. Every man who has had sufficient experience and observation to make an intelligent juror knows that the sheriff, as the chief law executive officer of his county, is expected to perform the services above mentioned, and that he does it as a matter of official obligation. And since that is what is expected of the sheriff, no juror would likely be influenced by what the sheriff does in that regard. What the sheriff did in this case was within the commonly observed requirements of his official duty, and the trial is not subject to criticism for what he thus did. Let us imagine, if we can, the picture of a sheriff abandoning the district attorney and engaging in busy consultations, in open view to all, with counsel for the defendant in the impaneling

of a jury in a criminal case. Certainly the sheriff will not and must not take part in the procurement of an unfair juror for either side, but it is his duty to see that the district attorney is advised against a juror whom he knows or has reason to believe would be unfair to the state. Counsel for defendant are always well prepared and well able to keep off jurors who are objectionable to the defense, but in most cases the district attorney must rely on the sheriff in the matter of fairness of the jury, as respects the interest of the state.

During the trial of the case, appellant was arrested by the sheriff under a warrant issued by the federal court, and which warrant the sheriff had been authorized by said court to serve. Appellant who had theretofore been on bail was put in jail by the sheriff, and during the remainder of the trial appellant was brought from the jail to attend the sessions of the trial in the same manner as in the case of a defendant who had no appearance bond or bail. Appellant thereupon filed special pleas and a motion under which appellant insisted that, by reason of the facts mentioned, the state court had been ousted of its jurisdiction and could proceed no further with the trial. No applicable controlling principle is pointed out to us by appellant, nor is any authority cited, by which we would be warranted in sustaining the stated contention.

The indictment charged appellant with embezzling the sum of twenty-four thousand six hundred twenty-nine dollars and thirty-five cents. This sum is made up of the seventeen items or transactions, hereinbefore referred to, all of which were placed in evidence by the state. Appellant contends that these different items were of disconnected crimes, and he relies on the well-known rule that when a defendant is on trial for one offense the state cannot aid the proof against him by showing that he has committed other offenses. Whitlock v. State (Miss.), 6 So. 237. We might dismiss this con-

tention with the observation that since the conviction of appellant was inevitable, under the facts proved, and not disputed, in the Willis Ladner transaction, no harm was done appellant by the admission of testimony in respect to the other items. Starling v. State, 90 Miss. 255, 43 So. 952, 13 Ann. Cas. 776; Garrard v. State, 50 Miss. 147, 153. We prefer, however, to rest our conclusion, in rejecting this assignment of error, upon the rule that where the transactions are all of a series in a common and interrelated scheme or plan or system, devised and executed by the accused for the one end of embezzling from his employer, then all of the related transactions may be received in evidence. Appellant admits the rule of law as last above stated, but denies the applicability thereof to the facts of this case. Upon a careful examination of this record and of the several items or transactions involved, we are of opinion that the case falls well within the stated rule in respect to a common and related scheme or system.

What we have above said is enough to dispose of appellant's contention that he was entitled to a peremptory instruction, and of the criticism made in regard to the instructions which were granted or refused. All the other assignments are in respect to matters which were addressed to the sound discretion of the trial court and which cannot be used as a ground of reversal unless it is made manifest to us that there has been a palpable abuse of that discretion. Hemingway v. State, 68 Miss. 371, 401, 8 So. 317. No abuse of discretion is made manifest on this record, and hence comment by us in respect to those discretionary matters would be of no value in an opinion addressed to them in detail in this case.

Affirmed.