# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-KA-01170-COA

**RODNEY WAYNE SMITH A/K/A HOT ROD**                              **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                    **APPELLEE**

DATE OF JUDGMENT: 07/06/2017
TRIAL JUDGE: HON. DINA RICHELLE LUMPKIN
COURT FROM WHICH APPEALED: PEARL RIVER COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT: OFFICE OF STATE PUBLIC DEFENDER
 BY: DANIEL HINCHCLIFF
ATTORNEY FOR APPELLEE: OFFICE OF THE ATTORNEY GENERAL
 BY: ALICIA AINSWORTH
DISTRICT ATTORNEY: HALDON J. KITTRELL
NATURE OF THE CASE: CRIMINAL - FELONY
DISPOSITION: AFFIRMED - 10/09/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE LEE, C.J., FAIR AND WILSON, JJ.**

**WILSON, J., FOR THE COURT:**

¶1. Following a jury trial in the Pearl River County Circuit Court, Rodney Wayne Smith was convicted under Mississippi Code Annotated section 97-9-45 (Rev. 2014), which makes it a crime for "any person sentenced to the Mississippi Department of Corrections [(MDOC)] for any term [to] escape or attempt to escape from his particular unit or camp of confinement or the boundaries of the penitentiary as a whole." At the time of his "escape," Smith was on "house arrest" under the jurisdiction of the MDOC in the "Intensive Supervision Program" (ISP). *See* Miss. Code Ann. §§ 47-5-1001 through -1015 (Rev. 2015). Smith cut his monitoring device off his ankle and fled. Smith claims that his conviction must be reversed

and rendered because an escape from house arrest does not constitute an escape from the "penitentiary" under section 97-9-45. However, the Legislature has made clear that an escape from house arrest is a felony escape. *See* Miss. Code Ann. § 47-5-1007(8) (Rev. 2015). Therefore, Smith's conviction under section 97-9-45 is affirmed.

## FACTS AND PROCEDURAL HISTORY

¶2. The only issue that Smith raises on appeal is an issue of statutory interpretation that does not turn on the particular facts of his case. Therefore, we only generally summarize the underlying facts that led to his indictment and conviction in this case.[1]

¶3. On May 12, 2014, Smith pled guilty to racketeering, Miss. Code Ann. § 97-43-5 (Rev. 2014), and was sentenced to twenty years in MDOC custody, with eighteen years suspended, two years of ISP (house arrest), and eighteen years of post-release supervision. While on ISP, Smith was required to wear an electronic monitoring device on his ankle at all times, and he was allowed to leave his home in Poplarville only to go to work or to attend other meetings or activities preapproved by his ISP officer, Scott Davis. On December 22, 2014, Smith failed to report to Davis as required by his ISP agreement. Davis used Smith's electronic monitoring device to locate him at his girlfriend's house in Picayune.[2] However, by the time Davis reached Smith's girlfriend's house, Smith had already left. Davis then received notice of a "device tamper," which meant that Smith had cut his monitoring device off of his ankle. Smith had left the device at his house. Davis tried to call Smith several

---

[1] "[W]e view the evidence in the light most favorable to the State . . . ." *Lenoir v. State*, 222 So. 3d 273, 279 (¶25) (Miss. 2017).

[2] Smith's girlfriend was also on house arrest.

times, but Smith would not answer his phone.

¶4.    On January 6, 2015, Davis received information that Smith was at another house in Pearl River County. Davis went to the house with two officers from the Pearl River County Sheriff's Department, but when they arrived at the house, Smith fled into the woods and escaped. United States Marshals finally caught Smith on January 13, 2015, at his ex-wife's house in Hancock County.

¶5.    Smith was indicted for escape under section 97-9-45, *supra*, as a nonviolent habitual offender. *See* Miss. Code Ann. § 99-19-81 (Rev. 2015). Smith filed a pretrial motion to dismiss the indictment, arguing that his escape from house arrest was not subject to prosecution under section 97-9-45; however, the circuit court denied his motion. Smith was then convicted following a jury trial in the Pearl River County Circuit Court. The court sentenced him to serve five years in MDOC custody as a nonviolent habitual offender.

## ANALYSIS

¶6.    As stated above, Smith raises only one issue on appeal: he argues that an escape from house arrest is not an escape within the meaning of section 97-9-45.

¶7.    In relevant part, section 97-9-45 makes it a crime for "any person sentenced to the [MDOC] for any term [to] escape or attempt to escape from his particular unit or camp of confinement or the boundaries of the penitentiary as a whole." The Legislature has defined "the penitentiary" as follows:

> The plantation known as Parchman owned by the state in Sunflower and Quitman Counties, and in such other places as are now or may be hereafter owned or operated by the state for correctional purposes shall constitute the facilities of the correctional system for the custody, punishment, confinement

3

> at hard labor and reformation of all persons convicted of felony in the courts of the state and sentenced to the custody of the department, and whenever the term "penitentiary" or "state penitentiary" appears in the laws of the State of Mississippi, it shall mean any facility under the jurisdiction of the Department of Corrections which is used for the purposes described herein.

Miss. Code Ann. § 47-5-3 (Rev. 2015). The Legislature has defined "facility," as used in the above definition, to include "any facility for the custody, care, treatment and study of offenders which is under the supervision and control of the [MDOC], including but not limited to the State Penitentiary property located in Sunflower and Quitman Counties." *Id.* § 47-5-4(d) (Rev. 2015). The "correctional system" includes all MDOC "facilities, institutions, programs and personnel . . . utilized for adult offenders who are committed to the custody of the [MDOC]." *Id.* § 47-5-4(i).

¶8. The ISP or "house arrest" is "used as an alternative to incarceration" for certain classes of offenders. Miss. Code Ann. § 47-5-1003(1) (Rev. 2015). An offender placed on house arrest is "confine[d] . . . to his place of residence under the terms and conditions established by the [MDOC]," and he "is under the full and complete jurisdiction of the [MDOC]." *Id.* §§ 47-5-1001(e) & 47-5-1003(3).

¶9. Our Supreme Court has held that the ISP constitutes "imprisonment." *Tipton v. State*, 150 So. 3d 82, 85-86 (¶¶9-13) (Miss. 2014). In fact, the Supreme Court went so far as to say that ISP is "best characterized" as like "'being in the penitentiary except sleeping at home.'" *Id.* at 86 (¶11) (quoting the circuit judge in *Ivory v. State*, 999 So. 2d at 420, 423 (¶3) (Miss. Ct. App. 2008)). "[T]he purpose of the ISP is to confine inmates who are under the complete jurisdiction of the ISP. . . . [P]risoners in the ISP are, for all intents and purposes, prisoners

with the same liberty interests as those in actual prisons." *Id.* at (¶13). The offender must "submit completely to the MDOC, giving the State access to his home and his body," and he must "forego several significant constitutional rights enjoyed by free Americans." *Id.*

¶10. Smith claims that his "escape" from the ISP did not amount to an "escape from his particular unit or camp of confinement or the boundaries of the penitentiary as a whole." Miss. Code Ann. § 97-9-45. We disagree.

¶11. As noted above, the Legislature has made clear that "the penitentiary" includes not only the State Penitentiary at Parchman but also any other "facility under the jurisdiction of the [MDOC]" that is used for correctional purposes. Miss. Code Ann. § 47-5-3. Moreover, the Legislature has addressed this issue directly by providing that "[n]otice shall be given to [an offender placed on house arrest] that violation of the order of home detention shall subject the participant to prosecution for the crime of escape as a felony." Miss. Code Ann. § 47-5-1007(8). We can only interpret the statute's reference to "the crime of escape as a felony" as a reference to section 97-9-45, as we can identify no other crime that this phrase could describe.

¶12. "It is a well-settled rule of statutory construction that when two statutes pertain to the same subject, they must be read together in light of legislative intent." *Tunica Cty. v. Hampton Co. Nat'l Sur.*, 27 So. 3d 1128, 1133 (¶15) (Miss. 2009). "[I]n construing statutes in pari materia, . . . all of the relevant statutes must be taken into consideration, and a determination of legislative intent must be made from the statutes as a whole." *Martin v. State*, 501 So. 2d 1124, 1127 (Miss. 1987). "Statutes on the same subject . . . should if

5

possible be construed in harmony with each other to give effect to each." *Roberts v. Miss. Republican Party State Exec. Comm.*, 465 So. 2d 1050, 1052 (Miss. 1985). Applying these principles, we must read section 97-9-45 together with the specific, on-point statement found in subsection 47-5-1007(8). We conclude that an escape from house arrest is a crime under section 97-9-45. Therefore, Smith's conviction and sentence are **AFFIRMED**.

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR.**